## BAKE–RITE MFG. CO. v. TOMLINSON et al.

(Circuit Court of Appeals, Ninth Circuit. December 20, 1926.)

No. 4885.

**1. Patents ⬯328—Patent 1,320,662, claim 1, for doughnut machine, held valid and infringed.**

Tomlinson patent, No. 1,320,662, claim 1, for doughnut machine, *held* valid, unanticipated, and infringed.

**2. Patents ⬯11—Patent claiming combination of means operating together to perform function held valid, and not attempt to patent principle.**

Rule that patent covering generally every means or method producing a given result is void as attempt to patent a principle *held* inapplicable to patent claiming combination of means operating together to perform a certain function.

**3. Patents ⬯112(3)—Presumption of patentable difference arising from granting patent does not negative infringement.**

Patent for specific improvements on invention disclosed in prior patent raises prima facie presumption of patentable difference, but presumption does not negative infringement of prior patent.

**4. Patents ⬯237—Manufacture of device under later patent held not material on issue of infringement.**

Where earlier patent is entitled to range of equivalency sufficiently broad to include alleged infringing device, it is not material on issue of infringement that plaintiff manufactures device under a later patent.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Patent infringement suit by Jennie Tomlinson, administratrix of the estate of Walter H. Tomlinson, deceased, and others, against the Bake-Rite Manufacturing Company. Decree for plaintiffs, and defendant appeals. Affirmed.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal. (Wm. S. Graham, of San Francisco, Cal., of counsel), for appellant.

Fraley & Paul, of Philadelphia, Pa., and William K. White and Charles M. Fryer, both of San Francisco, Cal., for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Tomlinson, administratrix, and others, including Display Doughnut Machine Corporation, sued the Bake-Rite Company for infringement of claim 1 of patent No. 1,320,662, issued November 4, 1919, application filed March 15, 1918, to Tomlinson, for a doughnut machine. Display Doughnut Machine Corporation is the owner of an exclusive license under the patent as assignee of plaintiffs Bergner and Morris, who originally obtained the license. Bake-Rite Manufacturing Company pleaded anticipation and lack of invention, and justified under the Lindsey patent, No. 1,569,383, issued on application filed October 7, 1919, which was before Tomlinson's patent was issued, but patent for which issued January 12, 1926, after the commencement of this suit.

The District Court found that claim 1 disclosed invention, that it was not anticipated and that the Bake-Rite Company's device infringed. Injunction issued and defendant appealed.

[1] The claim involved is as follows:

"In an apparatus of the character described (a) a receptacle for hot grease; (b) mechanism for turning doughnuts or the like over after they have been in a separate receptacle for a predetermined length of time; (c) a mechanism for thereafter removing them after they have been cooked for a further predetermined length of time."

Tomlinson's patent shows a trough in which two conveyors are immersed, each conveyor having an upwardly inclined portion. The upwardly inclined portion of the first conveyor is located substantially in the middle of the tank. The upwardly inclined portion of the second conveyor is at the right hand end of the tank. The second conveyor has a plurality of upstanding vanes, which cause a flow of liquid in the tank along the top of the tank, and in reverse direction along the bottom of the tank. A doughnut dropped into the tank at the left passes along until it meets the first upwardly in-

clined portion of the first conveyor, where it is turned over, dropped into the hot lard again, goes along through the tank and until it is elevated by the second upwardly inclined portion, and it is then discharged out of the machine. As the doughnut travels through the first portion of the trough, it is cooked on one side, and, after being turned over and passing over the upper part of a wheel shown in the device, it is deposited in the tank and cooked on the opposite side before it is discharged from the machine.

Prior to May, 1917, there was no doughnut cooking device comprising as one of the elements a mechanism for turning the doughnut over automatically at certain periods during the cooking operation. The older mechanism merely disclosed means to enable an operator to turn over at one time a plurality of doughnuts by hand. Tomlinson's device was practical and a step in advance. It was also a commercial success. Plaintiffs Bergner, Morris, and Display Doughnut Machine Corporation and others obtained licenses and have paid royalties to Tomlinson and his heirs.

Among the patents mainly relied upon to sustain the plea of anticipation are those to Varian, No. 1,086,248, February, 1914, and to Trout, No. 1,107,464, August, 1914. Trout's patent is a mechanism for galvanizing metal objects. He shows a receptacle for a liquid with means to convey objects through the liquid. He had no idea of turning and floating the object from one side to the other at a certain period during the progress of the object through the liquid. If a doughnut were put into a Trout machine and passed between the conveyors, in all probability it would be crumbled to pieces. Nor is Trout's device adapted to elevate and float the object out of the liquid, turn it over, and deposit it again on the opposite side.

Varian showed means for predetermining the time during which an article being cooked is progressed through the circular channel by the flow of the cooking liquid. His device was for vegetable slicing and cooking, especially Saratoga chips, but Varian failed to show any means to turn over the article being cooked from one side to the other at a given time during the cooking operation. It is significant that, when Lindsey, patentee in patent No. 1,569,383, January 12, 1926, for an automatic doughnut cooker covering defendant's machine, was trying to overcome a rejection of certain of his claims upon patents to Varian, he pointed out in November, 1920, that his machine differed from Varian's patent, in that Varian, while disclosing means for depressing potatoes, did not disclose means for turning them over.

It is argued by defendant that, in the prosecution of Bergner's application for patent No. 1,492,542, for cooking apparatus, April, 1924, Bergner, because of the citation of Varian, modified certain of his claims. But Bergner's claims were directed to his specific form of improvement over Tomlinson's device in the idea of conveying the doughnuts by a propelled grease column, rather than by a propelled conveyor. Bergner did not claim a turn-over device, and, though Varian may have been pertinent to Bergner, he does not seem to have been pertinent to Tomlinson. The matter is clarified by the testimony that in Varian's patent the paddle shown, when brought into contact with a doughnut, would mutilate it. Sometimes it would turn the doughnut over, but at other times the doughnut would stick to the blades and be carried around and around for many times.

Smith and Rois patents require no special mention, further than to say that neither of them discloses the elements or combination defined in the claims of the patent in suit.

[2] It is also argued that Tomlinson's patent is invalid, because it is an attempt merely to patent a principle, function, or result. Appellants cite authorities holding that a patent covering generally any and every means or mechanism or method producing a given result is void as an attempt to patent a principle. That rule, undoubtedly generally correct, is inapplicable here, for the reason that Tomlinson claims a combination of means which operate together to perform a certain function. Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Denning Wire & Fence Co. v. American Steel & Wire Co. (C. C. A.) 169 F. 793.

We think infringement is proved. Defendant's device embodies the substance of the invention of the Tomlinson patent. In it there is a trough or channel of uniform width throughout its length; mechanism for turning doughnuts after they have been in the receptacle for a predetermined length of time; co-acting parts combined which propel the doughnuts through the trough at a rate of speed so that they will arrive at the turn-over device at a time subsequent to deposit in the trough, and will thereafter be conveyed from the turn-over device to the conveyor, where they are to be removed after a further period of time. Defendant has constructed his trough in spiral form, but his purposes and objects are the same as

plaintiff's. Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112.

It is specially urged that the machine of the defendant does not convey the doughnuts for a predetermined length of time through the trough. However, the movement of doughnuts through the trough in a column of grease propelled by the blades of the pump is clearly the equivalent of the conveyor used in Tomlinson's device to propel the doughnuts through the trough. It does not avoid infringement to substitute, for the conveyors of Tomlinson, blades by which there is a positive flow produced in the grease, with a result that the doughnuts are propelled through the trough. Blake v. Robertson, 94 U. S. 728, 24 L. Ed. 245. Again, inasmuch as defendant's machine is intended to produce a doughnut satisfactory for commercial market, the current of liquid flowing through channels must operate to predetermine the time during which the object floating will travel therein, or, in other words, the time consumed in traveling the course must equal the time necessary to cook the doughnut properly.

It is said that the mode of operation of the Tomlinson patent is different from that in the machine of defendant; that if you take out the horizontal conveyors the liquid in Tomlinson's tank remains quiet. Obviously it would, provided nothing were substituted instead of the conveyors; but defendant has substituted the propeller and paddle blades, and thus has created an equivalent for Tomlinson's conveyor for carrying the doughnuts through the trough during the cooking operation. Detroit Copper Co. v. Arizona Mine Co. (C. C. A.) 215 F. 100; Von Schmidt v. Bowers (C. C. A.) 80 F. 121.

We are cited to the record showing that the Lindsey patent was involved in interference proceedings in the Patent Office with Bergner's patent, and that as between Bergner and his assignee, Display Doughnut Corporation, on the one side, and Lindsey, on the other, the decision of the Court of Appeals for the District of Columbia (6 F. [2d] 705) rendered the matter there decided res adjudicata between the parties to the present suit. We cannot so hold. After Tomlinson applied for his patent in March, 1918, and before patent was issued to him in November, 1919, Lindsey applied for patent (in October, 1919), and represented to the Patent Office that he claimed only certain improvements over the Tomlinson invention, namely, the gyratory course over which the doughnuts were to be conveyed, and certain

other specifications not here material. Afterwards Bergner applied for patent in March, 1922, claiming certain specific improvements over the invention disclosed in the Tomlinson patent. Bergner's application was drawn into interference with the Lindsey application. Lindsey prevailed, and his patent, No. 1,569,383, was issued to him.

[3] The patent to Lindsey raises a prima facie presumption that there is a patentable difference between his device and Tomlinson's. That presumption, however, does not exclude the fact that Lindsey's patent may include those things which are exclusively Tomlinson's property under the prior patent to him. Lindsey, in interference proceedings with Bergner, described specific means for progressing the doughnuts over a *gyratory* course in the receptacle under *propulsion by the fluid,* including a guide extending spirally and outward from the center to the periphery. But, in view of the liberal construction to which we think Tomlinson's patent is entitled, it does not follow that Lindsey does not use the underlying combination which was previously patented to Tomlinson. It has often been held that, in the relations of a later patent to a prior one, the Patent Office, in examining the second application for a a patent, is not concerned with the scope of the claim of the first, and pays no attention thereto, except to the early disclosure by the specifications and drawings; also, that a patentable difference does not of itself tend to negative infringement. Herman v. Youngstown Car Mfg. Co. (C. C. A.) 191 F. 579. In that case the drawings showed, and the specifications of the later patent described, a structure generally similar to the patent shown in the earlier grant; but each one of the claims of the later patent was found to be confined to some modification or supposed improvement added to the underlying combination of the earlier art. It was held that the existence of the later patent could have no tendency to disprove infringement, unless for other reasons the conclusion was first reached that the earlier patent is as to the later structure specific and generic. In Curry v. Union Electric Welding Co., 230 F. 422, the Court of Appeals for the Sixth Circuit held that, if it be assumed that the earlier patent was so limited that it could reach nothing except the precise form shown in the drawings or other forms equivalent in their detail and aspect, "then it would be true that the later patent could be valid only on the theory that its device was not that kind of an equivalent of the device of the earlier patent; but, obviously, if it is assumed, as

we here conclude, that the earlier patent is entitled to a range of equivalency broad enough to reach the later form, the question whether the later form also embodies patentable modification or improvement is quite immaterial."

[4] As the earlier patent to Tomlinson is entitled to a range of equivalency broad enough to reach the Lindsey device, the fact that he manufactures under a later patent is not material upon the issue of infringement. Gordon et al. v. Turco Co. (C. C. A.) 247 F. 487; Simplex Window Co. v. Hauser (C. C. A.) 248 F. 919; Jonas v. Roberti (C. C. A.) 7 F.(2d) 563; French v. Buckeye Iron, etc., Co. (6 C. C. A.) 10 F.(2d) 257; Monroe Body Co. v. Herzog (6 C. C. A.) 13 F.(2d) 705.

The decree is affirmed.