**LUCKE et al. v. COE, Com'r of Patents.**
No. 5663.

Court of Appeals of the District of Columbia.
Argued March 10, 1933.

Reargued Oct. 3, 1933.
Decided Feb. 5, 1934.

VAN ORSDEL, Associate Justice, dissenting in part.

William S. Hodges, of Washington, D. C., and Wallace R. Lane and Harry S. Demaree, both of Chicago, Ill., for appellants.

T. A. Hostetler, Sol. of the Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

After the filing of the original opinion in this case, a rehearing was granted upon the application of the Commissioner of Patents.

The appeal is from a decree dismissing appellants' bill filed under the provisions of section 4915, Rev. St., as amended (section 63, tit. 35, U. S. C. [35 USCA § 63]), which provides that: "whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the board of appeals to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, *as specified in his claim, or for any part thereof,* as the facts in the case may appear. * * *" [Italics ours.]

Appellant elected to invoke the jurisdiction of an equity court instead of appealing from the decision of the Board of Appeals to the United States Court of Customs and Patent Appeals.

The alleged invention relates to an electric vacuum or suction cleaner. Of the three claims that were finally rejected in the Patent Office, the claim reproduced in the margin is sufficiently illustrative.[1] Appellants sought in the court below to amend their bill by inserting six claims in addition to those considered by the Patent Office. The court below not only sustained the decision of the Patent Office, but denied the motion to add new claims.

The question is presented, therefore whether under the provisions of section 4915, Rev. St., the court may consider claims not in the application as presented to the Patent Office.

In Butterworth v. U. S. ex rel. Hoe, 112 U. S. 50, 61, 5 S. Ct. 25, 31, 28 L. Ed. 656, the court, after stating that section 4915, Rev. St., provided a remedy by bill in equity, said: "This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the Patent-office, like that authorized in section 4911 [35 USCA § 59a note], confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits. Such has been the uniform and correct practice in the circuit courts. Whipple v. Miner [C. C.] 15 F. 117; Ex parte Squire, 3 Ban. & A. 133 [Fed. Cas. No. 13,269]; Butler v. Shaw [C. C.] 21 F. 321."

We now examine the decisions cited by the court. In Whipple v. Miner (C. C.) 15 F. 117, it was held that the authority of the Circuit Courts to grant a patent under section 4915 is an original jurisdiction, notwithstanding an adverse decision of the Commissioner of Patents.

In the Squire Case, 3 Ban. & A. 133, 12 O. G. 1025, 22 Fed. Cas. page 1015, No. 13,-269, it was held that a bill filed under section 4915 is an original and not an appellate proceeding, and that in such a proceeding it is proper to take testimony before an examiner. In that case reference was made to a manuscript decision by Justice Nelson in the case of Atkinson v. Boardman (see 2 Fed. Cas. page 97, No. 607), in which the Justice said that the provisions allowing the party failing in his application in the Patent Office "to file a bill, do not restrict the hearing, in this court, to the testimony used before the commissioner. Either party, therefore, is at liberty to introduce additional evidence, or rather, to speak more accurately, the hearing is altogether independent of that before the commissioner, and takes place on such testimony as the parties may see fit to produce agreeably to the rules and practice of a court of equity."

---

[1] "In a suction cleaner, a casing provided with a suction mouth, means supporting the casing with the plane of the suction mouth a substantial distance above the plane normally occupied by the object to be cleaned, a series of spaced apart guard fingers carried by the casing and extending across the suction mouth, means for moving a current of air past the object to be cleaned and through the casing so as to lift said object and suspend it against said fingers, a member rotatably mounted in the casing and provided with rigid beater members having curved surfaces positioned to contact with said object, the beaters being helically mounted on the rotatable member and arranged in a series extending from one end of said rotatable member to the other, said beaters being rigidly secured to the rotatable member and having orbits of travel extending below the plane occupied by the object to be cleaned while suspended against said fingers, by not extending to the plane in which said object normally rests when not suspended, and means rotating the rotatable member."

In Butler v. Shaw (C. C.) 21 F. 321, 326, in an opinion by Justice Gray of the Supreme Court, then on the circuit, the court said that in appeals from the Patent Office to the Supreme Court of the District: "that court acts strictly as a court of appeal in the matter of granting patents; * * * the hearing is summary, and is confined to the specific reasons of appeal, and to the evidence produced before the commissioner * * *. But a bill in equity in a circuit court of the United States, under section 4915, by a party against whom an interference has been decided by the commissioner of patents, is a suit within the ordinary jurisdiction in equity of the courts of the United States; * * * and, as has been held in this and other circuits, the court may receive new evidence, and has the same powers as in other cases in equity."

It thus appears that the question here in issue was not involved or considered in Butterworth v. U. S. ex rel. Hoe, 112 U. S. 50, 5 S. Ct. 25, 28 L. Ed. 656. The court did rule in that case that new *evidence* might be introduced. That such was the understanding of the court is apparent in the decision in the subsequent case of Gandy v. Marble, 122 U. S. 432, 439, 7 S. Ct. 1290, 1292, 30 L. Ed. 1223, where the court observed: "Although, as was said by this court in Butterworth v. U. S. ex rel. Hoe, 112 U. S. 50, 61, 5 S. Ct. 25 [28 L. Ed. 656] (citing cases), the proceeding by bill in equity, under section 4915, on the refusal to grant an application for a patent, intends a suit according to the ordinary course of equity practice and procedure, and is not a technical appeal from the patent-office, nor confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits, yet the proceeding is, in fact and necessarily, a part of the application for the patent."

Schiller v. Robertson (D. C. Md. 1928) 28 F.(2d) 301, and Kaplan v. Robertson (D. C. Md. 1931) 50 F.(2d) 617, 620, are relied upon by appellants. The decision on this point in the Schiller Case was based upon agreement of counsel, and contained no discussion of the question. In the Kaplan Case it was ruled that the court "may consider claims not included in the application filed in the Patent Office, provided they are germane to the subject-matter," citing the Schiller Case as authority for the ruling.

This court, in Durham v. Seymour, 6 App. D. C. 78 (1895), in a painstaking opinion, squarely ruled that the complainant in an equity proceeding under section 4915 is confined to the claims presented in the Patent Office and that the patent must issue, if at all, upon those claims only.

In our view, the law was correctly stated in that decision. Section 4888, Rev. St. (section 33, tit. 35, U. S. C. [35 USCA § 33]), requires an applicant for a patent to make application to the Commissioner of Patents in writing. The application must contain a description of the invention and the applicant must "point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery." The provision in section 4915 [35 USCA § 63] that the court "may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear," refers to the claim passed upon by the Patent Office. A supposed invention or discovery is usually an improvement on some existing article, process, or machine. "It is necessary, therefore," for the alleged inventor, "in his application to the Patent Office, to describe that upon which he engrafts his invention, as well as the invention itself * * *. Congress, therefore, very wisely requires of the applicant a distinct and specific statement of what he claims to be new, and to be his invention. In practice, this allegation of the distinct matters for which he claims a patent comes at the close of the schedule or specification * * *. This distinct and formal claim is, therefore, of primary importance, in the effort to ascertain precisely what it is that is patented to the appellant. * * *" Merrill v. Yeomans, 94 U. S. 568, 570, 24 L. Ed. 235. In Western Electric Mfg. Co. v. Ansonia Brass & Copper Co., 114 U. S. 447, 452, 5 S. Ct. 941, 944, 29 L. Ed. 210, the court said: "It has been held by this court that 'the scope of letters patent should be limited to the invention covered by the claim; and, though the claim may be illustrated, it cannot be enlarged by the language in other parts of the specification.' " In Grant v. Walter, 148 U. S. 547, 554, 13 S. Ct. 699, 701, 37 L. Ed. 552, it was held that the scope of the invention could only be ascertained by reference to "distinct and formal claims." See, also, In re Seabury, 23 App. D. C. 377, 381.

We think it plain that Congress did not intend to authorize the filing of claims not before the Patent Office. The instant case is enlightening on this point. It was sought to add six claims to those considered in the Patent Office. Had these claims been intro-

duced in that office they would have received the scrutiny of expert tribunals, and the court would have had the benefit of their reasoning and conclusion.

■ We reaffirm our ruling in Durham v. Seymour, 6 App. D. C. 78, to the effect that while section 4915 authorizes the introduction of new evidence, it does not authorize the filing of additional claims. Were it to be held that new claims could be filed under section 4915, it is conceivable that some of the claims presented for the first time in the equity proceeding might be of such a character that the Patent Office would have allowed them if they had been presented there; but it is inconceivable that Congress, after setting up the comprehensive machinery of the Patent Office for the purpose of granting patents on applications, should authorize another tribunal, lacking the technical equipment which Congress recognized as desirable in considering applications for patents, to perform that function, and burden the courts with work which the special tribunal, peculiarly fitted to pass on claims, might by allowance render unnecessary. It would mean that an inventor, whose application accompanied by a specification and drawings with but a single broad claim which was rejected in the Patent Office, might present a number of new claims to the court if germane to the specification and drawings. Such a situation would seriously affect the usefulness of the Patent Office, and create a result which Congress never intended. While the hearing in the equity proceeding is de novo, the inquiry there must be confined to the invention claimed in the Patent Office. The lower court was right in denying the motion to add new claims.

■■ We now consider the rejected claims. The alleged invention, as in Merrill v. Yeomans, 94 U. S. 568, 570, 24 L. Ed. 235, is admittedly an improvement on existing suction cleaners. The three claims involved are specific, and as drawn cover nothing more than the actual improvement made. In the device, that portion of the floor covering adjacent to the suction mouth is continuously lifted a slight distance from the floor, and while so lifted and suspended is continuously given a rapid succession of blows or raps through the entire length of the mouth of the cleaner. Thereby the floor covering is subjected to vibration and forced slightly out of sealed contact with the suction mouth adjacent to the point where with each blow or rap air is admitted, thereby permitting dirt loosened by vibration and suction to be removed.

Lucke's application was filed October 23, 1922 (and subsequently assigned to the Hoover Company). The Lucke device has not only supplanted the device of the prior art, but with an increased efficiency of over 100 per cent. Machines embodying the improved features have been purchased by the public in this and foreign countries to the extent of more than $100,000,000. While this fact is not conclusive of patentability, it is persuasive. Minerals Separation, Ltd., v. Hyde, 242 U. S. 261, 270, 37 S. Ct. 82, 61 L. Ed. 286; Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; see, also, Application of Parr, 58 App. D. C. 231, 26 F.(2d) 1009.

In the Patent Office the following references were relied upon: Dolph (reissue), No. 11,541, May 26, 1896; Hutchinson, No. 813,557, February 27, 1906; Blake, No. 1,-207,480, December 5, 1916; Hoover No. 1,-247,837, November 27, 1917; Hoover, No. 1,364,554, January 4, 1921. It was not found by the tribunals of the Patent Office that any one of the references was an anticipation of the Lucke device, but that the references, taken collectively, would enable an expert to spell out the improvement admittedly made by Lucke.

The reissue to Dolph is not a suction machine and was not designed to function as does the Lucke machine and is not capable of so functioning. It is a brush machine and is equipped with a few hinged beaters which, according to Dolph's specification, are "so regulated that they will just strike the surface of the carpet as the brush is rapidly revolved."

The Hutchinson patent discloses a device similar to that of Dolph. The brush is relied upon for throwing the dirt into a dustpan, and no means are provided for creating a suction. The rug or carpet lies flat against the floor while the device is in operation. The Hutchinson specification refers to beaters consisting of small metallic or rubber balls, these beaters being "flexibly connected with the shaft in any suitable manner." That the function of these beaters is not important is apparent from the fact that only two of them are shown in any one figure of the drawing. The rug or carpet while being cleaned lies flat on the floor, and it is impossible for the beaters to function as do the "rigidly mounted beaters" of the Lucke device. In our view,

the small number of flexibly mounted balls in the Hutchinson device were designed merely to add to the effectiveness of the brush.

The beaters in the Blake machine are circumferentially spaced 180 degrees apart and strike only twice in a complete revolution of the rotor. They are not arranged spirally and are not formed of rigid projections spaced apart the proper distance to give the necessary successive vibrations to the carpet. In our view, the Blake beaters do not suggest the beaters of the Lucke device. The title to Blake's patent, "Combined Suction Cleaner, Blower and Polishing Device," is suggestive. A machine capable of polishing will not function as does the Lucke machine. The beaters of the Lucke machine are helically mounted and arranged in series extending from one end of the rotatable member to the other. Blake shows two separate disconnected beaters and, while he states that more may be used, the suggestion is of little consequence. In our opinion the Blake device is not an anticipation of the device of the Lucke machine.

The Board of Appeals stated: "The main reference relied upon by the examiner is the patent to Hoover No. 1,247,837, upon which the claims clearly read, except for the limitation to rigidly mounted beater elements." We attribute more importance to the exception than do the tribunals of the Patent Office. The beaters in the brush of the Hoover patent are, in our view, incapable of performing the function of the rigidly mounted beater elements of the Lucke machine, namely, beating the carpet or rug. All the objections to the brush-type cleaner are present in the Hoover machine, and are eliminated in the Lucke device.

The record discloses that the Hoover Company maintains a corps of engineers whose duty it is to design improvements in suction cleaners. All the patents relied upon by the Patent Office as anticipating Lucke's device were before these engineers, yet, highly skilled in the art as they were, they were unable to do what Lucke has done; namely, produce a machine that is a greater advance over the prior art than any one of the patents referred to by the Patent Office tribunals. It is comparatively easy, now that the Lucke device is in evidence, to take this and that from the references and achieve a nunc pro tunc solution of the problems confronting Lucke when he made his invention. We rule, therefore, that the claims denied by the Patent Office should be allowed.

The decree dismissing the bill is reversed, and the cause remanded for further proceedings in harmony with this opinion.

Reversed and remanded.

VAN ORSDEL, Associate Justice, adhering to his original opinion in this case, dissents from the holding that additional claims may not be introduced in the equity proceedings under section 4915, Rev. Stats., as amended (35 USCA § 63); but concurs as to the patentability of the invention under the claims considered.